Argued February 25, reversed and remanded March 21, reconsideration
denied April 27, petition for review denied July 15, 1977

STATE OF OREGON, *Appellant,*
*v.*
WALTER CECIL TAYLOR, *Respondent.*
(No. 9468, CA 7099, No. 9469, CA 7100)

STATE OF OREGON, *Appellant,*
*v.*
DELBERT LEROY VANDRE, *Respondent.*
(No. 9470, CA 7101)

STATE OF OREGON, *Appellant,*
*v.*
DONALD EUGENE SCOTT, *Respondent.*
(No. 9486, CA 7102)
(Cases consolidated)
561 P2d 662

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

J. Marvin Kuhn, Deputy Public Defender, Salem, argued the cause for respondents. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Lee and Tanzer, Judges.

TANZER, J.

## TANZER, J.

This is a consolidated appeal by the state from four orders sustaining demurrers and dismissing charges of driving while suspended. The charging documents alleged that each defendant drove a motor vehicle on a public highway "during a period when his license to drive a motor vehicle was suspended" without further elaboration regarding the suspension or notice.

The demurrers were based upon two grounds and were sustained upon the first: that the charging instruments do not state offenses because they fail to charge the "necessary element of mental culpability." The argument is that ORS 161.095(2), except in certain circumstances, makes a culpable mental state an element of every crime. ORS 161.095(2) provides:

"Except as provided in ORS 161.105, a person is not guilty of an offense unless he acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 161.105 clearly states the exception:

"(1) Notwithstanding ORS 161.095, a culpable mental state is not required if:

"* * * * *

"(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof.

"* * * * *."

In that statutory framework, then, the question is whether ORS 487.560 "clearly indicates a legislative intent to dispense with any culpable mental state requirement." The state has provided an exhaustive discussion of the legislative history in support of its view of legislative intent, but it is not necessary to look to that resource because the words of the statutes are clear and unambiguous.

The statutory definition does not include a require-

ment of culpable mental state either by its express terms or by implication. The performance of an act while a specific condition exists, without more, constitutes the crime. ORS 487.560(1) provides:

> "A person commits the crime of driving while suspended if he drives a motor vehicle upon a highway during a period when his license or permit to drive a motor vehicle or his right to apply for a license to drive a motor vehicle in this state has been suspended by a court or by the division or revoked by the division."

Lack of notice of suspension has been made an affirmative defense under specified circumstances by subsection (2) (b), which provides:

> "(2) In a prosecution under subsection (1) of this section, it is an affirmative defense that:
>
> "* * * * *
>
> "(b) The defendant had not received notice of his suspension or revocation as required by ORS 482.570 or in the manner provided in paragraph (c) of subsection (3) of this section."

■■ We conclude from the words and design of ORS 487.560 that the legislature intended to dispense with culpable mental state as an element of the crime of driving while suspended. Since affirmative defenses need not be negated in the charging instrument, *see* *State v. Keys,* 25 Or App 15, 19, 548 P2d 205, *rev den* (1976); ORS 161.055, the demurrers were erroneously sustained on the first ground.

The other ground of demurrer was that the charging instruments failed to allege the reason for the suspension and therefore failed to inform the defendants whether they were charged with felonies or misdemeanors.

Subsection (5) of ORS 487.560 makes driving while suspended a Class A misdemeanor, except as provided in subsection (6). Subsection (6) makes driving while suspended a Class C felony if the suspension or revocation was the result of a conviction for manslaughter or any one of several other enumerated

offenses relating to motor vehicle operation.[1] Because the cause of the suspension is not alleged, the defendants assert that they cannot tell whether they are charged with misdemeanors under subsection (5) or felonies under subsection (6) and that the instruments are therefore defective under the rule of *State v. Bettin/English/Remling,* 10 Or App 230, 498 P2d 382, *rev den* (1972).

In *Bettin* we affirmed the sustaining of demurrers to charges of criminal activity in drugs by possession of marihuana. ORS 167.207 as it then existed made such activity a felony, or, if the amount of marihuana was less than one ounce, a misdemeanor. We held that the failure to specify the amount of marihuana was fatal to the indictment because the defendants were not informed of the degree of crime with which they were charged.

We applied the *Bettin* rule in *State v. Dechand,* 13 Or App 530, 511 P2d 430 (1973), to an indictment charging theft by receiving in the first degree under ORS 164.095. The crime of theft by receiving is a Class A misdemeanor, ORS 164.045, unless one or more of the facts enumerated in ORS 164.055 are present, in which case the crime is theft in the first degree, a Class C felony. We held that the indictment which did

---

[1] ORS 487.560 provides in pertinent part:

"* * * * *

"(5) Except as provided in subsection (6) of this section, driving while suspended or revoked is a Class A misdemeanor.

"(6) Driving while suspended or revoked is a Class C felony if the suspension or revocation was the result of conviction for any of the following offenses:

"(a) Manslaughter or criminally negligent homicide resulting from the operation of a motor vehicle.

"(b) Any crime punishable as a felony in the commission of which a motor vehicle was used.

"(c) Failure to perform the duties of a driver involved in an accident or collision which results in physical injury to any person.

"(d) Reckless driving.

"(e) Fleeing or attempting to elude a police officer.

"(f) Driving while under the influence of intoxicants."

not allege any of the aggravating facts which would convert the lesser offense into the greater, was insufficient to charge first degree theft. We did not, however, go the additional step which had been taken in *Bettin,* and hold that the indictment was voidable for lack of specificity. Instead, we reversed on other grounds and pointed out in dicta:

> "If the sufficiency of the second count of the indictment were the only issue, we might well reduce defendant's conviction to second degree theft and remand for resentencing. * * *"

The more logical rule, as suggested in *Dechand,* is that where the allegations of a charging instrument are sufficient to allege a crime, the instrument is not rendered insufficient by a failure to allege or negate additional facts which would enlarge the charge to a greater crime. Thus an indictment for unarmed robbery is sufficient even though it does not allege armed robbery. A manslaughter indictment is not insufficient for failure to negate additional elements which would constitute murder. In other words, an indictment charging a crime is neither insufficient nor insufficiently definite and certain because it fails to charge or negate a greater crime. The indictment in *Bettin* was sufficient to charge a crime, and that case is overruled.

Here the charges allege all the elements of the Class A misdemeanor. It is sufficient against a demurrer for failure to state a crime. The demurrers were properly overruled on that ground.

Reversed and remanded.