IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON, )
) No. 38591-4-III
    Respondent, )
)
    v. )
)
SCOTT ALLEN BRITTON, ) UNPUBLISHED OPINION
)
    Appellant. )

SIDDOWAY, J. — Scott Britton was sentenced as a persistent offender in 1997 to

life without parole, based in part on prior convictions for second degree robbery. After

second degree robbery was removed as a strike offense and the legislature enacted a law

permitting offenders like Mr. Britton to be resentenced, he appeared for resentencing in

November 2021. He was given a sentence of 542 months' total confinement based on an

offender score of 10.

Mr. Britton argues that the resentencing court erred in rejecting his argument that

two of his prior convictions, imposed in Oregon, were not comparable to Washington

felony robberies. While we agree with Mr. Britton that the sentencing court should not

have treated the issue as resolved by Mr. Britton's 1997 conviction and appeal, the

State's evidence at the 2021 resentencing demonstrated comparability. And contrary to

Mr. Britton's argument in a statement of additional grounds, the sentencing court

properly considered all of the State's evidence of his criminal history presented at the resentencing. We affirm.

PROCEDURAL BACKGROUND

In 1997, a jury found Scott Britton guilty of first degree murder and first degree arson for the 1996 killing of Aaron Laws and the burning of Laws's home. *State v. Britton*, No. 17004-7-III, 2000 WL 217738 at \*1 (Wash. Ct. App. Feb. 24, 2000) (unpublished). Based on Britton's criminal history, which consisted of prior convictions for second degree robbery, the State sought his conviction as a persistent offender under Washington's "three strikes" law, mandating a sentence of life imprisonment without the possibility of parole. At sentencing, Mr. Britton challenged the "three strikes" law on several grounds, but his challenges were unsuccessful. He was found by the court to be a persistent offender and was sentenced to life without parole.

Three of Mr. Britton's prior second degree robbery convictions were Oregon convictions. The State's 1997 sentencing memoranda addressed whether these foreign convictions counted as prior most serious offenses for sentencing purposes. Mr. Britton did not contest the comparability of his prior Oregon crimes to a Washington strike offense, however, and the trial court made no explicit finding that his Oregon crimes were comparable to Washington crimes.

In 2019, the Washington Legislature amended RCW 9.94A.030(33) to remove second degree robbery from the list of offenses that qualify as a strike offense. LAWS OF

2

2019, ch. 187, § 1. Two years later, it enacted a requirement to resentence offenders who had been sentenced as persistent offenders based in whole or in part on a current or past conviction for robbery in the second degree. LAWS OF 2021, ch. 141, § 1, codified at RCW 9.94A.647.

In response to the legislation, Mr. Britton was resentenced in 2021. At resentencing, Mr. Britton contended that in calculating his offender score, his three Oregon convictions for second degree robbery should not count. He argued that Oregon's crime of second degree robbery is not *legally* comparable to the Washington crime and that there was "no way" for the court to determine the *facts* on which his Oregon convictions were based. Clerk's Papers (CP) at 290.

Citing *State v. Tili*, 148 Wn.2d 350, 60 P.3d 1192 (2003), the State argued that comparability was decided in 1997, and collateral estoppel should apply. Alternatively, the State argued that the court could determine from the record of the Oregon convictions that all three were factually comparable to the Washington crimes of robbery in the first or second degree.

The resentencing court orally ruled that whether under the doctrine of collateral estoppel or law of the case, the comparability of the Oregon convictions had been resolved by the 1997 judgment and sentence. "[A]s an aside," it stated, "the State presented sufficient evidence here today to again have them count." Rep. of Proc. (RP)

No. 38591-4-III
*State v. Britton*

at 5.[1]  It included all of Mr. Britton's Oregon convictions in calculating his offender score

and imposed a sentence of total confinement of 542 months, near the high end of the

standard range.

Mr. Britton appeals.

ANALYSIS

On appeal, Mr. Britton contends the resentencing court erred by counting two of

his prior Oregon convictions toward his offender score: a 1989 conviction in Benton

County, Oregon, for a robbery charged as robbery in the first degree that he resolved by

pleading guilty to the lesser crime of robbery in the second degree; and a 1991 conviction

in Linn County, Oregon, for a robbery charged as robbery in the second degree, to which

he pleaded no contest.  The convictions contributed to his offender score of 10, which he

contends should have been an 8.  He seeks remand for another resentencing.

A defendant's offender score, together with the seriousness level of current

offenses, dictates the standard sentence range used in determining his or her sentence.

RCW 9.94A.530(1).  To calculate the offender score, the court relies on its determination

of the defendant's criminal history, which is "the list of a defendant's prior convictions

and juvenile adjudications, whether in this state, in federal court, or elsewhere."

RCW 9.94A.030(11).  A prior conviction from another state is included in a defendant's

_____

[1] Our record includes three nonconsecutively paginated verbatim reports of
proceedings.  The only one we cite is the report of the 2021 resentencing.

4

offender score only if the foreign crime is comparable to a Washington felony. *See id.*;

RCW 9.94A.525(3). The State bears the burden of proving by a preponderance of the

evidence the existence and comparability of the out-of-state offenses. *State v. Ross*,

152 Wn.2d 220, 230, 95 P.3d 1225 (2004).

I.      BRITTON IS NOT COLLATERALLY ESTOPPED FROM CONTESTING COMPARABILITY

The State argued in the trial court and argues on appeal that because Mr. Britton

did not contest the comparability of the Oregon crimes in 1997, he was collaterally

estopped to deny their comparability at his 2021 resentencing. Well-settled Washington

case law holds that collateral estoppel applies in criminal cases to bar relitigation of

issues actually determined by a prior judgment. *E.g.*, *State v. Peele*, 75 Wn.2d 28, 30,

448 P.2d 923 (1968). The party asserting collateral estoppel must show (1) the issue

decided in the prior adjudication is identical with the one presented in the second action,

(2) the prior adjudication ended in a final judgment on the merits, (3) the party against

whom the plea is asserted was a party or in privity with the party to the prior

adjudication, and (4) application of the doctrine does not work an injustice. *Tili*, 148

Wn.2d at 361. To be conclusive in a subsequent action, the issue must be both actually

litigated and necessarily determined. *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135

Wn.2d 255, 262, 956 P.2d 312 (1998) (quoting RESTATEMENT (SECOND) OF JUDGMENTS

§ 27 (AM. LAW INST. 1982).

The State argues that even though Mr. Britton's lawyer chose not to contest the comparability of the Oregon convictions at the 1997 sentencing, the State briefed the issue, and a decision that the Oregon convictions were comparable was "inherent" in the court's imposition of a persistent offender sentence. Br. of Resp't at 13. Imposition of the sentence would ordinarily mean that comparability was *necessarily determined*, although absent an express finding of comparability (and there was none in 1997), there is the possibility that the need to determine comparability was overlooked. Even if necessarily determined, however, the issue might not have been *actually litigated*. The concepts are different. For purposes of collateral estoppel, "An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading." RESTATEMENT § 27, cmt. e. Similarly, comparability of the Oregon convictions was not actually litigated even though the State briefed it at the 1997 sentencing, because the defense made no response.

The failure to challenge comparability in 1997 could have preservation of error consequences for any appeal of that judgment, to be sure, but it did not collaterally estop Mr. Britton from challenging comparability for the first time at a resentencing. He was not "relitigating" comparability, he was choosing to litigate it for the first time. *Cf. State v. Cabrera*, 73 Wn. App. 165, 169-70, 868 P.2d 179 (1994) (where defendant had not

6

objected to foreign convictions included in his criminal history in earlier sentencings,

collateral estoppel did not foreclose him from raising the objection to those convictions

for the first time). Mr. Britton's arguments on appeal are not foreclosed by collateral

estoppel.

II.     THE RECORD IS SUFFICIENT TO ESTABLISH COMPARABILITY

In addition to accepting the State's collateral estoppel argument, the resentencing

court ruled that the State presented sufficient evidence in 2021 to include the challenged

Oregon convictions in Mr. Britton's offender score. We conduct de novo review of a

comparability ruling. *State v. Sublett*, 176 Wn.2d 58, 87, 292 P.3d 715 (2012).

When considering a conviction from another jurisdiction, Washington courts will

compare the foreign offense with Washington offenses in order to properly classify the

crime. RCW 9.94A.525(3). The elements of the out-of-state crime must be compared to

the elements of a Washington criminal statute in effect when the foreign crime was

committed. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005).

To determine comparability, we "first consider if the elements of the foreign offense are

substantially similar to the Washington counterpart. If so, the inquiry ends." *Sublett*, 176

Wn.2d at 87. If the elements of the foreign conviction are not substantially similar,

however, or if Washington defines the offense more narrowly than the foreign

jurisdiction, it is necessary to look to the factual record of the foreign conviction to

establish factual comparability. *State v. Latham*, 183 Wn. App. 390, 397, 335 P.3d 960

(2014). To avoid unconstitutional judicial fact-finding under *Apprendi*,[2] the trial court can consider only facts proved to a trier of fact beyond a reasonable doubt, or those to which the defendant admitted or stipulated. *State v. Olsen*, 180 Wn.2d 468, 473-74, 325 P.3d 187 (2014) (citing *Lavery*, 154 Wn.2d at 258). Offenses are factually comparable "if the defendant's conduct constituting the foreign offense, as evidenced by the undisputed facts in the foreign record, would constitute the Washington offense." *Latham*, 183 Wn. App. at 397-98. The State must prove factual comparability by a preponderance of the evidence. *Id.* at 398.

This court previously determined that Oregon's several robbery statutes are broader than Washington's robbery statutes, because they incorporate a foundational statute, Oregon Revised Statute (ORS) 164.395, under which a person is guilty of third degree robbery when he or she is committing *or attempting to commit* theft with the use or threat of force as described by the statute. *State v. Howard*, 15 Wn. App. 2d 725, 736, 476 P.3d 1087 (2020). While *Howard* dealt with the current version of ORS 164.395, the statute was identical in that respect when Mr. Britton committed his Oregon robberies. *See* former ORS 164.395 (1971). Then and now, Oregon elevates robbery to the second degree if a person violates ORS 164.395 and either "(a) Represents by word or conduct

---

[2] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

that the person is armed with what purports to be a dangerous or deadly weapon; or

(b) Is aided by another person actually present." ORS 164.405.

In 1988 and 1989, former RCW 9A.56.210 (1975) provided that in Washington, by contrast, "[a] person is guilty of robbery in the second degree if he commits robbery." Robbery was committed when a person

> unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone.

Former RCW 9A.56.190 (1975). The statute further provided that for robbery to be committed,

> [s]uch force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

*Id.*

Given that Washington robbery statutes require that force or threatened force be used during a theft, while Oregon's also criminalize force or threatened force used during an attempted theft, the State concedes that Mr. Britton's two challenged Oregon convictions were not legally comparable to a Washington felony robbery. It argues that both are factually comparable, however. Mr. Britton disagrees. We examine their factual comparability in turn.

9

A. *Factual comparability: September 13, 1988, Oregon offense*

In February 1991, Mr. Britton pleaded "no contest" in Linn County, Oregon, in Cause Number 89-03047-1, to a charge of committing second degree robbery on or about September 13, 1988. The documents he presented at resentencing as proof of this crime and its comparability were the indictment, the no contest plea, and his judgment and sentence.

In order to determine what facts a defendant admitted in entering a plea, this court "look[s] to the law of the state in which the defendant entered the plea as that law existed at the time of the plea—that is, the law from which the defendant could reasonably expect the consequences of the guilty plea to flow." *State v. Releford*, 148 Wn. App. 478, 489, 200 P.3d 729 (2009) (emphasis omitted).

In Oregon, a criminal defendant may plead "guilty," "not guilty," or "no contest." ORS 135.335. The Oregon Court of Appeals has observed that "[t]he no contest plea was made available in Oregon 'to provide for an "*Alford*"[3] type of plea,'" quoting commentary to the *Criminal Law Revision Commission Proposed Oregon Criminal Procedure Code, Final Draft and Report* § 252, 149 (1972). *State v. Jackson*, 319 Or. App. 789, 791, 511 P.3d 82 (2022). The court observed, "With an *Alford* plea, a defendant does not admit guilt 'but admits that sufficient evidence exists to convict him

---

[3] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

of the offense.'" *Id.* (quoting *United States v. Ramirez-Gonzalez*, 755 F.3d 1267, 1273 (11th Cir. 2014)).

In *Jackson*, the defendant argued that his plea of no contest to a harassment charge, of which he was convicted, should not have been relied on to revoke his probation, since he had not admitted guilt. *Id.* at 790. The appellate court observed, however, that before entering a judgment of conviction from the plea, the trial court had been required to satisfy itself that there was a factual basis for determining that Jackson committed the crime to which he was pleading. *Id.* at 791 (quoting ORS 135.395;[4] *State v. Heisser*, 232 Or. App. 320, 329, 222 P.3d 719 (2009)). The convicting trial court was required to determine that Jackson understood the nature of the charge, inform him of rights he was waiving and certain potential consequences of his plea, and determine that the plea was voluntary and intelligently made. *Id.* (quoting ORS 135.385(1)-(2); ORS 135.390(1)[5]). *Jackson* holds that the trial court was "entitled to rely on the

_____

[4] ORS 135.395, which requires the court to "mak[e] such inquiry as may satisfy the court that there is a factual basis for the plea," remains unchanged from 1988 and 1989.

[5] ORS 135.385(1), which requires the court to address the defendant personally and determine that the defendant understands the nature of the charge, and ORS 135.390(1), which provides that the court shall not accept a plea of guilty or no contest without determining that it is voluntary and intelligently made, both remain unchanged from 1988 and 1989. Changes have been made to the rights and potential consequences of the plea that are required to be disclosed by the court under ORS 135.385(2), but we deem them immaterial to *Jackson*'s point that determinations made by the court before accepting a plea provide a sufficient basis for relying on the judgment.

judgment of conviction as evidence that defendant committed a crime." *Id.* at 792.

"[T]he judgment of conviction was legally sufficient evidence for the trial court to find

by a preponderance of the evidence that defendant failed to obey all laws" in violation of

that condition of his probation. *Id.*

*Jackson* also cited *State v. Sullivan*, 197 Or. App. 26, 104 P.3d 636 (2005), which

held it had not been plain error for the trial court to treat an *Alford* plea as an admission

of facts for *Apprendi* and *Blakely*[6] purposes. *Jackson*, 319 Or. App. at 791; *see Sullivan*,

197 Or. App. at 30-31 (while "reasonable minds could differ" had the issue been raised in

the trial court, the issue was unpreserved, and it was not plain error entitled to review).

Finally, the Oregon Court of Appeals has held that a defendant who enters pleas of

no contest without limiting or qualifying them, has "'assent[ed] to the broadest

construction of his pleas.'" *State v. Ham*, 300 Or. App. 304, 307, 453 P.3d 927 (2019)

(alteration in original) (quoting *State v. Slagle*, 297 Or. App. 392, 395, 441 P.3d 644

(2019) (citing, in turn, *Hibbard v. Bd. of Parole*, 144 Or. App. 82, 87-88, 925 P.2d 910

(1996), *vac'd on other grounds*, 327 Or. 594, 965 P.2d 1022 (1998))).

The indictment for Mr. Britton's September 1988 offense bore handwritten

modifications, and stated that Britton did

---

[6] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

> unlawfully and knowingly threaten immediate use of physical force upon Robin L. Myers, by *representing by word or conduct that defendant* ~~displaying a pistol and~~ was armed with a deadly weapon, to-wit: a pistol, while in the course of committing theft of property, to-wit: money, with the intent of preventing resistance to the said defendant's taking and retention immediately after the taking of the said property, and during the commission of this felony, the defendant personally threatened the use of a firearm, to-wit: a pistol . . . .

CP at 306 (handwritten interlineations italicized; strikings reproduced). Thus, his plea of no contest was to a charge that he made the required threatened use of force in the course of *committing* theft, not in the course of committing or attempting theft.

The indictment charges the elements required to establish the second degree robbery under Washington law as it existed in 1988: theft of property while knowingly threatening physical force, and with the intent of preventing resistance to taking and retaining the property. *Cf. Howard*, 15 Wn. App. 2d at 738 (agreeing with State's cross appeal that a third degree robbery conviction of Howard from Oregon was factually comparable to Washington's crime of second degree robbery).

Mr. Britton tries to counter the narrowing language of the indictment with citations to two cases, but both make only the unremarkable observation that standing alone, an indictment is not evidence of guilt. Br. of Appellant at 13 (citing *State v. Echols*, No. 78969-4-I, slip op. at 4 (Wash. Ct. App. Apr. 27, 2020) (unpublished);[7]

---

[7] Available at https://www.courts.wa.gov/opinions/pdf/789694.pdf. Unpublished decisions have no precedential value, are not binding on any court, and may be cited only for such persuasive value as a court deems appropriate. *See* GR 14.1.

*United States v. Ciambrone*, 601 F.2d 616, 622 (2d. Cir. 1979) ("An indictment, of course, is merely a charge and does not constitute any evidence of guilt.")). Obviously, however, the State did not rely on the indictment standing alone. It relied on the import, under Oregon law, of Mr. Britton pleading "no contest" to the indictment.

*Jackson* establishes that Oregon courts regard a no contest plea as giving evidentiary weight to the pleaded-to charges; *Sullivan* establishes that a trial court can deem matters to which a defendant pleads no contest as admitted without committing plain error; and *Hibbard* and later cases hold that a defendant who enters a "no contest" plea without qualification or limitation assents to a broad construction of the plea. The resentencing court did not err by treating Mr. Britton's 1991 Linn County conviction as comparable to a Washington conviction for second degree robbery.

      *B.     Factual comparability: January 24, 1989, Oregon offense*

In March 1989, Mr. Britton pleaded guilty in Benton County, Oregon, in Cause Number 89-0111, to a charge of committing second degree robbery on or about January 24, 1989. The documents presented as proof of this crime and its comparability were the judgment and sentence and the indictment. The indictment charged Mr. Britton in its count 1 with robbery in the first degree of Kenneth A. Richey and in its count 2 with theft in the second degree of property of Roth's IGA. The judgment and sentence establish that Mr. Britton ultimately pleaded guilty to only count 1, the robbery, and that he pleaded guilty to robbery in the second degree rather than the first degree.

14

The conduct charged by count 1 of the indictment was that Mr. Britton, on the charging date, did

> unlawfully and knowingly threaten the immediate use of physical force upon KENNETH A. RICHEY by displaying a deadly weapon, a .22 caliber revolver, with which the said defendant was armed, while in the course of *committing theft of property*, to-wit: money, with the intent of compelling KENNETH A. RICHEY to deliver the property to the defendant.

CP at 301 (emphasis added).

In Oregon, a plea of guilty is a "judicial admission of all the material allegations of the indictment in a most indisputable form." *Richardson v. Williard*, 241 Or. 376, 378, 406 P.2d 156 (1965); *State v. Kappelman*, 162 Or. App. 170, 175, 986 P.2d 603 (1999); *see State v. Hetland*, 31 Or. App. 529, 534-35, 570 P.2d 1201 (1977).

Here, too, the conduct alleged by the indictment was that Mr. Britton committed theft of property, not attempted theft. By charging theft of property, knowingly threatening physical force, and with the intent of preventing resistance to taking and retaining the property, the indictment again establishes the elements of Washington's second degree robbery statute as it existed in 1988. In light of Mr. Britton's admission to these elements "in a most indisputable form," the resentencing court did not err by treating Mr. Britton's 1989 conviction as comparable to a Washington conviction for second degree robbery.

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Britton advances three arguments.

He argues, first, that the State should not have been permitted to introduce any evidence of his prior convictions at his 2021 resentencing that had not been offered at his 1997 sentencing. The law provides otherwise. Under RCW 9.94A.647(2), a sentencing court shall grant a motion for resentencing "if it finds that a current or past conviction for robbery in the second degree was used as a basis for a finding that an offender was a persistent offender." At the resentencing, "the court shall sentence the offender as if robbery in the second degree was not a most serious offense at the time the original sentence was imposed." *Id.* In determining a sentence, the court may rely on information admitted, acknowledged, or proved at the time of sentencing. RCW 9.94A.530(2). In the case of resentencings, "the parties shall have the opportunity to present and the court to consider all relevant evidence regarding criminal history, including criminal history not previously presented." *Id.*

An earlier "no second chance" rule announced in *State v. Ford*, 137 Wn.2d 472, 973 P.2d 452 (1999), had provided that in some circumstances the State's evidence could be limited in a resentencing, but the legislature rejected the limitation by amending RCW 9.94A.530(2) and other provisions in 2008. LAWS OF 2008, ch. 231, §§ 1-62. The Supreme Court later held that the no "second chance" rule had been based on judicial

16

economy, not due process, and was legitimately altered by legislation. *See State v. Jones*, 182 Wn.2d 1, 3, 338 P.3d 278 (2014).

Mr. Britton's second argument echoes his first (that the State had no right to present additional evidence at resentencing) but invokes the doctrine of collateral estoppel. Collateral estoppel is a doctrine that can preclude relitigation of issues. If relitigation of an issue is not precluded, the doctrine has nothing to say about the evidence to be considered in resolving an issue.

Mr. Britton's third argument is that the State should not be allowed a further opportunity, at a third resentencing, to introduce additional evidence pertinent to his foreign convictions. We are not ordering a third resentencing.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, A/C.J.

Staab, J.

17